IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:06-CV-410-FL(3)

| | |
|---|---|
| JANICE K. HALL,<br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>    Defendant. | **MEMORANDUM &<br>RECOMMENDATION** |

This matter is before the Court upon the parties' joint Motions for Judgment on the Pleadings **[DE's 9 & 12-13]**. The time for the parties to file any responses or replies has expired. Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. 636(b)(1), this matter is before the undersigned for a Memorandum and Recommendation. The underlying action seeks judicial review of the final decision by Defendant denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). For the following reasons, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings **[DE-9]** be DENIED, Defendant's Motion for Judgment on the Pleadings **[DE-12]** be GRANTED, and the final decision by Defendant be AFFIRMED.

## Statement of the Case

Plaintiff applied for DIB on November 25, 2003, alleging that she became unable to work on December 31, 2000 due to asthma (Tr. 12-13). This application was denied at the

1

initial and reconsideration levels of review. *Id.* at 12. A hearing was later held before an Administrative Law Judge ("ALJ"), who found Plaintiff was not disabled during the relevant time period in a decision dated November 7, 2005. *Id.* at 12-19. The Social Security Administration's Office of Hearings and Appeals denied Plaintiff's request for review, rendering the ALJ's determination as Defendant's final decision. *Id.* at 4-7. Plaintiff filed the instant action on October 11, 2006 **[DE-1]**.

## **Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...
> Id.

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility

2

determinations, or substitute [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990).

**Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process which must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).
> Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the five-step evaluation. First, the ALJ found that Plaintiff is no longer engaged in substantial gainful employment (Tr. 13-14). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: 1) asthma; 2) obesity; 3) hypertension; and 4) gastroesophageal reflux disease. *Id.* at 14. In completing step three, however, the ALJ determined that these impairments, either singly or in

combination, were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. *Id*.

The ALJ then proceeded with step four of his analysis and determined that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of medium work. *Id*. at 14-18. Based on this finding and the testimony of a vocational expert, the ALJ found that Plaintiff could perform her past relevant work as a data entry clerk. *Id*. at 17-18 Accordingly, the ALJ determined that Plaintiff was not under a disability at any time through the date of his decision. *Id.* In making these determinations the ALJ cited substantial evidence, a summary of which now follows.

First, the ALJ made a clarification with regard to Plaintiff's work activity. Although, he did find that Plaintiff was not engaged in substantial gainful activity, the ALJ also noted that:

> After the date of alleged onset of disability of December 31, 2000, the claimant worked and earned $8,262.00 in 2001 and $6,915.00 in 2002, working one day a week. On an average monthly basis these wages would not have reached substantial gainful activity earnings limits. However, the fact remains that the claimant has performed a fairly significant amount of work during the period of time she alleges disability. While the undersigned finds that this work was not substantial gainful activity, Section 1571 of Regulations No. 4 directs that this work may show that the claimant is able to do more work than she actually did. That is, the claimant's work activity after December 31, 2000 may indicate that she had the ability to perform substantial gainful activity.
> *Id*. at 13-14.

On May 6, 2000, Plaintiff was treated in a Nash Health Care Systems' emergency room. *Id*. at 85-86. She complained of shortness of breath triggered by environmental allergies. *Id*. at 85. The medical record indicates that this asthma attack was triggered by

4

working out in the garden all day. *Id*. Although the treating physician noted that Plaintiff had expiratory wheezes throughout her chest, he also noted that she was alert, oriented and in no distress[1]. *Id*. at 85. Plaintiff was treated with Albuterol, Atrovent and a tapering prednisone dose. *Id*. After three Atrovent treatments, her peak flow increased from 150 to 250. *Id*. Her chest was clear on reassessment. *Id*. She was diagnosed with exacerbation of asthma, released, and instructed to follow up if her condition worsened. *Id*.

Plaintiff was again treated by an Emergency Room in Nash Health Care Systems on November 21, 2000 for epigastric pain. *Id*. at 93-94. She was treated with an IV Hep-Lock and Pepcid, after which she began feeling better and was discharged. *Id*. After continued complaints of abdominal pain, Plaintiff underwent a laparoscopic cholecystectomy on January 25, 2001. *Id*. at 97. Following this procedure, there are few records indicating ongoing treatment for gastroesophageal reflux disease until January 8, 2004 when she was prescribed Nexium. *Id*. at 119. She reported improvement in her symptoms after taking Nexium. *Id*. at 116.

Dr. Alfred Covington treated Plaintiff for her asthma. On December 11, 2002 she reported tremendous improvement in her asthma and sinus symptoms after being treated with Advair. *Id*. at 138. Plaintiff had fair control of her asthma on February 12, 2003. *Id*. at 131-132. On May 7, 2003, Plaintiff reported good control of her asthma, blood pressure and headaches. *Id*. at 129. In addition, she admitted she often forgot to take her prescribed

---

[1] Plaintiff asserts that this record is incorrect. First, she contends the asthma attack was triggered by her husband dusting throughout their home. She also argues that she was in distress when she reported to the emergency room. *Id.* at 195.

Singular at night. *Id*. When seen on December 4, 2003, Plaintiff had mild and infrequent heartburn and headaches. *Id*. at 122. She reported poor control of her asthma and nasal allergies, although these conditions did show improvement after treatment with Prednisone and Augmentin *Id*. Despite this improvement she was still experiencing exercise induced shortness of breath and asthma. *Id*. Examples of activities that would trigger her shortness of breath were walking to her mailbox or mopping a floor. *Id*. However, on January 8, 2004, Plaintiff noted that the Prednisone and Augmentin continued to improve her symptoms and that she felt "a lot better." *Id*. at 118. Again, on February 9, 2004, Plaintiff reported good control of her asthma, headaches, heartburn and headaches. *Id*. at 116. Likewise, she noted improvement in her nocturnal asthma since she had begun taking Nexium. *Id*. Plaintiff indicated on April 8, 2004 that her asthma was under better control when she took Advair each day. *Id*. at 112. She did note, however, that her asthma was limiting her activities more than she would like. *Id*. Dr. Covington stated on July 21, 2004 that a recent exacerbation of Plaintiff's asthma was resolving. *Id*. at 108.

On February 1, 2005, Dr. Covington drafted a letter summarizing Plaintiff's symptoms. *Id*. at 172. He stated that Plaintiff "has moderate to severe persistent asthma which is exacerbated by exercise and as little exertion as walking to the mailbox or mopping a floor." *Id*. Dr. Covington further stated that despite the use of maximal pharmacotherapy, Plaintiff was still using her rescue inhaler several times a day. *Id*. However, Dr. Covington's treatment notes from January 19, 2005 indicated that Plaintiff's asthma had been "fairly well controlled" prior to the weather turning very cold. *Id*. at 185. This cold weather exacerbated

6

Plaintiff's asthma, although Dr. Covington categorized this exacerbation as "mild." *Id*. at 185-186. Furthermore, on May 19, 2005 Dr. Covington noted that Plaintiff had only used her nebulizer three times in the last three to four months. *Id*. at 181. The ALJ also noted that "there were previous references to the claimant not being compliant with her use of Singulair." *Id*. at 16, 129. Dr. Covington still described Plaintiff's asthma as severe, persistent, and uncontrolled, however. *Id*. at 182.

Thus, Plaintiff was treated by Dr. Covington regularly from November 2002 though July 2005. *Id*. at 109-142, 173-188. Although Plaintiff reported to Dr. Covington regular usage of her rescue inhaler, there is no indication that she ever needed to go to an emergency room or similar setting because of her asthma again. *Id*. Repeatedly, Dr. Covington made the following observations regarding Plaintiff upon examination: "chest symmetric without intercostal Retractions or use of accessory muscles. Chest expands normally. Lungs clear to anscultation throughout." *Id*. at 109, 111, 113, 115, 117, 119, 121, 126, 128, 130, 139, 174, 180, 182, 184. Likewise, Dr. Covington failed to note any wheezes, rales or rhonchi on these occasions. *Id*.

On August 1, 2005, Dr. Covington opined in a check form request that Plaintiff is "medically disabled from working due pursuant (sic) to the Listing of Impairments, Section 3.03B for asthma." *Id*. at 176. The ALJ made the following finding with regard to this statement:

> The claimant's treating physician Alfred Covington, M.D., was asked in a questionnaire whether the claimant's condition met Listing 3.03B, to which he answered yes. However, he did not explain the rationale for his finding nor is

there anything that shows what he considered or what the Listing standard was. Listing 3.03B requires attacks that in spite of prescribed treatment and required intervention occur at least every two months or at least six times a years. Section 3.00C notes that respiratory impairments are episodic in nature, the frequency and intensity of episodes that occur despite prescribed treatment are often major criteria for determining the level of impairment. Documentation for these exacerbations could include available hospital, emergency room and/or physician records to indicate the dates of treatment and the results of testing. Attacks of asthma as called for in 3.03 are defined as prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalation bronchodilator therapy in a hospital, emergency room or equivalent setting . . .The claimant has had only one overnight in-patient hospitalization for breathing problems which occurred in May 2000. Her record of treatment with Dr. Covington shows regular routine office visits may have occurred six times per year, but on many of those occasions she was reporting only mild to moderate problems that did not require intensive treatments. The pulmonary function testing cited by Dr. Covington was from 1992 [*Id.* at 175-178] and still did not meet the requirements and values called for in Listing 3.02. The undersigned finds that the claimant's condition does not meet those called for in the cited Listings, 3.02 or 3.03B . . . Indeed, it would appear that Dr. Covington's assessment of the claimant's capacity for work-related activities in February 2005 was overshadowed by the claimant's subjective complaints, which are not supported by Dr. Covington's own clinical findings and notes. In January 2005, the claimant was noted to be using her rescue inhaler less than once a day. On May 19, 2005, he noted that she had used her nebulizer maybe three times in the past three-to-four months [*Id.* at 172-174, 179-188]. Therefore, the undersigned does not give credence or controlling weight to Dr. Covington's opinion [*Id.* at 172-174].
*Id.* at 14, 16-17.

Plaintiff underwent an evaluation of her RFC conducted by Dr. David Buchin on January 15, 2004. *Id.* at 100-107. Dr. Buchin determined that Plaintiff could: 1) occasionally lift and/or carry 50 pounds; 2) frequently lift and/or carry 25 pounds; 3) stand and/or walk (with normal breaks) for a total of about six hours in an eight hour workday; 4) sit (with normal breaks) for a total of about six hours in an eight hour workday; and 5) push

8

and/or pull with no limitations other than those already noted for lifting and carrying. *Id*. at 101. No postural, manipulative, visual or communicative limitations were noted. *Id*. at 102-104. It was noted that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases. poor ventilation, etc. *Id*. at 104. No other environmental limitations were indicated. *Id*.

During her hearing before the ALJ, Plaintiff testified that she has had problems with her asthma since she was a young child. *Id*. at 205. She asserted that she has never known a day free of wheezing. *Id*. at 206. In September, 2000 she stopped working completely because of her asthma. *Id*. at 209. However, from January 2001 until December 2002 she worked eight hours a week. *Id*. Plaintiff testified that she has difficulty with her asthma every day and that her asthma control medications have provided little relief. *Id*. at 211-212. According to Plaintiff, dusting or vacuuming in her presence will trigger her asthma. *Id*. Although Plaintiff noted that she does cook, she later clarified that cooking "[a]t a certain time of day" would trigger her asthma. *Id*. at 212. Likewise, she claimed that she could perform few activities of daily living without difficulty. *Id*. at 213. For example, she asserted that she was unable to even walk to her mailbox. *Id*. While she was working, she testified that she used her rescue inhaler about 10 times a day or more. *Id*. at 214. Apparently she does do her own grocery shopping, although she only goes to grocery stores that will put the groceries in the car for her. *Id*. at 216. Additionally, Plaintiff serves as the youth leader for her church, along with her husband. *Id*. at 218. She testified that she limits her activities associated with this position to "everything inside", and mostly serves as

9

support for her husband. *Id*. However, she did state that she would occasionally paint with odorless paint. *Id*. Plaintiff stated that she purposely stayed away from fellow church members to avoid inhaling their perfume. *Id*. She testified that she was able to drive. *Id*. at 219. However, she alleged that walking from one end of her house to the other caused her to wheeze. *Id*.

With regard to Plaintiff's testimony, the ALJ made the following findings:

> The undersigned finds that the claimant does have some shortness of breath causing functional limitations, but that her complaints are not fully persuasive. She testified that in May of 2000, her husband dusted an end table, and she became so short of breath that she was rushed to the emergency room and they thought she would not make it. However, as noted previously, an earlier account showed she had been working in her garden outside when she reacted to her husband mowing grass. She testified that she worked one day a week in 2001 and 2002, but her earnings level were at least one-fourth to one-third or more of her previous earnings. The claimant testified that she had to frequently use her rescue medications. However, the record indicates that she was having mild-to-moderate symptoms and when she was compliant with all her medications, she was stable and had mild symptoms. She testified that being around colognes and perfumes are a problem and she finally stopped work in December 2002 due to fumes from the office machines. However, the file indicates she also stopped work in part to take care of her sick daughter. Consequently her complaints are not found to be fully persuasive and have been given little weight . . . The description of the symptoms and limitations which the claimant has provided throughout the record has generally been unpersuasive as to her allegation of total disability. The claimant's allegation that her impairments, either singly or in combination, produce symptoms and limitations of sufficient severity to prevent all sustained work activity is inconsistent with the medical and other evidence of record. When compliant with all her medications she is much less symptomatic. *Id*. at 17.

After weighing this evidence, the ALJ made the following finding with regard to

10

Plaintiff's RFC:

> claimant is able to perform a significant amount of work that requires lifting and carrying 25 pounds frequently and 50 pounds maximum. Her asthma and obesity would not prevent her from sitting or standing or walking six hours out of an eight hour workday. She has no postural, i.e. climbing, balancing, stooping, kneeling, crouching or crawling limitations. Her asthma prevents her from being exposed to concentrated pollutants, gases, dusts, or fumes.
> *Id.* at 16.

Finally, a vocational expert ("VE") testified at the administrative hearing. *Id*. at 220-224. Based on the ALJ's RFC determination, the VE opined that Plaintiff was capable of performing her past relevant work. *Id*. at 220-222. Accordingly, the ALJ determined that Plaintiff had not been under a disability through the date of his decision. *Id.* at 18.

Based on the forgoing record, the Court hereby finds that there was substantial evidence to support each of the ALJ's conclusions. Although Plaintiff lists several assignments of error, each assignment essentially contends that the ALJ improperly weighed the evidence before him. However, this Court must uphold Defendant's factual findings if they are supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court to do, her entire claim is meritless. Nonetheless, the undersigned will briefly address Plaintiff's claims more specifically.

The crux of all of Plaintiff's claims is that the ALJ erred in determining that Plaintiff's impairments did not equal Listing 3.03B. The Listing of Impairments, Section 3.03B states

11

that a claimant will be deemed disabled if she has asthma with:

> Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every two months or at least six times a year. Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.
> 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.03B.

Section 3.00C states:

> Episodic respiratory disease. When a respiratory impairment is episodic in nature, as can occur with exacerbations of asthma . . . , the frequency and intensity of episodes that occur despite prescribed treatment are often the major criteria for determining the level of impairment. Documentation for these exacerbations should include available hospital, emergency facility and/or physician records indicating the dates of treatment; . . . Attacks of asthma . . . as referred to in paragraph B of 3.03 . . . are defined as prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalation bronchodilator therapy in a hospital, emergency room or equivalent setting. Hospital admissions are defined as inpatient hospitalizations for longer than 24 hours. The medical evidence must also include information documenting adherence to a prescribed regimen of treatment as well as a description of the physical signs. For asthma, the medical evidence should include spirometric results obtained between attacks that document the presence of baseline airflow obstruction.
> *Id.* at § 3.00C.

The medical record indicates that Plaintiff had one attack which meets the requirements of § 3.00C. This attack, which took place several months prior to Plaintiff's alleged onset date, was considered by the ALJ. *Id.* at 16-18, 85-86. However, the record does not indicate a second such attack. On the contrary, Dr. Covington's examination notes during this time period repeatedly state that Plaintiff's lungs were clear. *Id.* at 109, 111, 113, 115, 117, 119, 121, 126, 128, 130, 139, 174, 180, 182, 184. Therefore, the undersigned finds

Case 5:06-cv-00410-FL   Document 15   Filed 08/07/07   Page 12 of 13

that the ALJ's determination that Plaintiff did not meet Listing 3.03B was supported by substantial evidence. Accordingly, Plaintiff's claim is meritless.

### **Conclusion**

For the aforementioned reasons, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings **[DE-9]** be DENIED, Defendant's Motion for Judgment on the Pleadings **[DE-12]** be GRANTED, and the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina this 7th day of August, 2007.

_____
William A. Webb
U.S. Magistrate Judge